UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

COREY S.,[1]

    **Plaintiff,**

v.

Case No. 3:20-cv-0231
Magistrate Judge Norah McCann King

COMMISSIONER OF SOCIAL SECURITY,[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Corey S. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 10, *Defendant's Memorandum in Opposition*, ECF No. 14, *Plaintiff's Reply*, ECF No. 15, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.      PROCEDURAL HISTORY

On November 1, 2016, Plaintiff filed his current application for benefits, alleging that he has been disabled since September 1, 2011, due to a number of physical and mental impairments. R. 169-74.[3] The application was denied initially and upon reconsideration. R. 72-94. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 109-12. Administrative Law Judge ("ALJ") Deborah F. Sanders held a hearing on November 14, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 38-71. In a decision dated March 28, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from November 1, 2016, *i.e.,* the date on which the application was filed, through the date of that decision. R. 14-37. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 17, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

II.     LEGAL STANDARD

A.      Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden

shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R.  § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so,

then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 44 years old on the date on which his application was filed. R. 27. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 19.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: pancreatitis, alcohol dependence, and affective, anxiety, and personality-related mental disorders. R. *Id.* The ALJ also found that Plaintiff's documented diabetes, facial fractures, laceration, and bilateral foot hallux valgus and hammer toe were not severe. R. 20.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of medium work. R. 22. The ALJ also found that Plaintiff had no past relevant work. R. 27.

At step five, the ALJ found that a significant number of jobs requiring medium and light exertion existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 28-29. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act since the application date. R. 29.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 10, *Plaintiff's Reply Brief*, ECF No. 15. The Acting Commissioner takes the position that her decision should

be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 14.

IV. **RELEVANT EVIDENCE**

Plaintiff testified at the administrative hearing that his diabetes and pancreatitis keep him from working. R. 50. "I can't move and do what I used to do. I'm not energetic no more." R. 51. He variously testified that he experiences "unexplainable" pain during a flare up of pancreatitis, R. 54, although he also experiences pain "all the time." R. 55. Alcohol and greasy foods cause flare-ups. *Id*. He can walk one or two blocks before having to stop because of asthma. R. 58. He lives alone and does his own cooking and grocery shopping. R. 58-59. He avoids people. R. 59.

Plaintiff testified that Marquetta Colbert, C.N.P., is his primary medical provider, R. 48, but he frequently presents to a hospital for care, R. 53, and the administrative record includes a number of hospital records, primarily for episodes of pain and vomiting associated with acute and chronic pancreatitis. Apart from symptoms of pancreatitis, findings on physical examination during those hospitalizations were, for the most part, negative. *See, e.g.*, R. 1207 (5/5 strength in all muscle groups, reflexes symmetric and intact, no edema), 1215, 1221, 1224, 1261 ("Patient moves all extremities with normal range of motion and strength"; "No sensory or motor deficits are noted"), 1216 ("Good range of motion in all major joints"; "Normal motor function. Normal sensory function").

Tanisha Richmond, D.P.M., first examined Plaintiff in February 2016 in connection with diabetes, corns, and a calcaneal spur. R. 1661. The podiatrist again saw Plaintiff in June 2018 for corns and callosities, for which he underwent debridement. R. 1667. Findings on musculoskeletal and neurological examination were primarily negative. R. 1665-66. That same month, Dr.

Richmond indicated that Plaintiff has callouses on both feet, as well as neuropathic symptoms of numbness, tingling and burning. R. 1661. However, she also indicated that Plaintiff's condition was "Good/Stable" with treatment. *Id.* According to the podiatrist, Plaintiff could stand or walk no more than a total of four hours, for two hours without interruption, and could sit for no more than a total of two hours. R. 1662. He could lift and carry up to five pounds only occasionally. *Id.* He had a limited range of motion in both feet and ankles. *Id.*

In February 2017, Judith Schwartzman, Psy.D., reviewed the record for the state agency and found that the record documented affective disorders as well as drugs and alcohol addiction disorders. R. 87-88. According to Dr. Schwartzman, Plaintiff could perform simple, routine tasks but, when his symptoms increase, "he will occasionally need flexibility in work schedule, taking breaks, and pacing." R. 91. He would "perform best in a non-public position, preferably working alone. Interactions with coworkers and supervisors should be infrequent and brief. Supervisors will need to offer constructive criticism." R. 91. Plaintiff "is capable of working in a setting with infrequent changes. He will need advance notice of major changes and a gradual implementation." *Id.*

At office visits in October 2017, December 2017 and January 2018, for diabetes follow-up care, Nurse Practitioner Colbert recorded findings of normal gait and full range of motion of the upper and lower extremities, intact motor strength and normal muscle tone of the upper and lower extremities, and brisk and symmetrical deep tendon reflexes. R. 1642, 1645, 1648. In March 2018, the nurse practitioner opined that Plaintiff is "unable to work at this time due to chronic pain. This affects his ability to stand, walk, lift, push or pull for extended periods…." R. 1640.

Throughout April and May 2018, David Heuser, D.C., treated Plaintiff for pain and stiffness in his neck and back. R. 1692-93. According to Chiropractor Heuser, Plaintiff can stand/walk for no more than four hours, for two hours at a time, and can sit for no more than six hours, for no more than two hours at a time. R. 1689. He can occasionally lift and carry up to 20 pounds. *Id*.

Jared Houseman, a sonographer, also completed a basic medical form[4] opining that Plaintiff can stand/walk for two hours without interruption and can lift/carry up to five pounds only occasionally. R. 2127.

V.    **DISCUSSION**

    A.    **Evaluation of the Medical Opinions**

Plaintiff first complains that the ALJ failed to properly evaluate the medical opinions in the record. This Court disagrees. An ALJ must consider all medical opinions in evaluating a claimant's application for benefits. 20 C.F.R. § 416.927(c). Under the regulations applicable to claims, like Plaintiff's, filed before March 27, 2017, the opinion of a treating provider must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2), (4). The Commissioner must provide "good reasons" for discounting the opinion of a treating provider, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)(citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

---

[4] The form is undated.

In the absence of a controlling treating source opinion, the ALJ must consider the following factors in deciding the weight to be given to any medical opinion: the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and other factors that "tend to support or contradict the medical opinion." 20 C.F.R. § 416.927(c)(1)-(6). However, a formulaic recitation of factors is not required. *See Frien v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits a claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

The ALJ expressly evaluated the opinions expressed by the various medical professionals in the record. As for the very restrictive opinion articulated by the treating podiatrist, Tanisha Richmond, the ALJ found:

> While normally controlling weight would be given to an opinion of disability from a treating physician, it is not so entitled if it is not well-supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with other substantial evidence of record. Dr. Richmond specializes in podiatry, and the claimant's foot condition was significant for only a short period of much less than a year in duration, with no documentation of significant, ongoing findings or complaint. Additionally, her assessment is inconsistent with the above-summarized longitudinal exam findings of record. Accordingly, I find that her assessment is not well-supported by the evidence but, rather, is inconsistent with the evidence of record. Therefore, I give her assessment no significant weight.

R. 25 (citations to record omitted). The ALJ also summarized the restrictive opinions articulated by Nurse Practitioner Colbert, Chiropractor Heuser, and Sonographer Houseman:

> Ms. Colbert, Dr. Heuser, and Mr. Houseman are not included among the acceptable sources of medical evidence defined in the regulations (20 CFR 415.927(f)). For that reason, information provided by them does not equal in probative value reports from those sources shown as being acceptable such as

9

> licensed physicians and osteopaths. Moreover, the longitudinal exams, as summarized above, document generally substantially normal findings. The above-summarized evidence also documents inconsistent presentations of pain by the claimant as observed by attending healthcare providers and he was consistently in no apparent distress or no acute distress on exam. Accordingly, I give no significant weight to the assessments of Ms. Colbert, Dr. Heuser, and Mr. Houseman.

R. 26 (citations to record omitted). The ALJ accorded "great weight" Dr. Schwartzman's opinion:

> I give great weight, but not controlling weight, to the more recent assessment of Dr. Schwartzman, who is well-qualified by reason of training and experience in reviewing an objective record and formulating an opinion as to limitations. She possesses specific understanding of our disability programs and their evidentiary requirements. Her assessment is generally consistent with and well supported by the evidence of the record as a whole, and is generally accepted as an accurate representation of the claimant's mental status. The evidence received into the record after the reconsideration determination concerning her status did not provide any credible or objectively supported new and material information that would alter Dr. Schwartzman's findings concerning his limitations. However, I did phrase the claimant's residual functional capacity in more vocationally relevant terms and do not find that the record supports the need for additional breaks beyond normally scheduled work breaks.

*Id.* (citations to record omitted).

As is clear from this summary of the relevant portions of the record and of the ALJ's consideration of the medical opinions, the ALJ's evaluation of the medical opinions fully conformed to the governing standards and enjoys substantial support in the record. The ALJ accurately summarized the medical evidence of record, considered the medical opinions in light of that record and, consistent with the governing regulation, clearly explained her evaluation of those opinions and the weight accorded those opinions. Plaintiff's complaint to the contrary is without merit.

B.   RFC Determination

Plaintiff also complains that, although the ALJ accorded "great weight" to Dr. Schwartzman's opinion, the ALJ failed to incorporate Dr. Schwartzman's limitations into the RFC.

The ALJ found that Plaintiff has the following RFC:

> The claimant has the residual functional capacity to perform medium[5] work as defined in 20 CFR 416.967(c). He can perform simple, routine, repetitive tasks, but not at a fast production rate pace or in settings with strict production quotas. He can occasionally interact with coworkers and supervisors, but must avoid tandem or shared tasks. He must not interact with the public. He is able to adapt to infrequent changes in the work setting but would require advance notice of major changes in order to allow gradual implementation of those changes.

R. 22. In making that RFC finding, the ALJ considered in detailed fashion the evidence of record and summarized that evidence:

> Physical exams, as summarized, document generally normal findings, except for some abdominal pain during episodes of pancreatitis. Range of motion, motor strength, and sensory and reflex functions have been normal. Thus, the claimant would be able to perform work of medium exertion, but heavy or very heavy exertion would potentially aggravate abdominal symptoms. The record does not document other persistent gastrointestinal findings such as diarrhea, vomiting, or nausea, particularly when he has been compliant with treatment.
>
> The above-summarized record documents generally normal mental status functioning but stress and interpersonal interactions aggravate the claimant's symptoms. Accordingly, he is limited to simple, routine, repetitive tasks, but not at a fast production rate pace or in settings with strict production quotas. He can occasionally interact with coworkers and supervisors, but must avoid tandem or shared tasks. He must not interact with the public. He is able to adapt to infrequent changes in the work setting but would require advance notice of major changes in order to allow gradual implementation of those changes.

R. 25.

---

[5] As noted above, the ALJ identified jobs that required both light and medium exertion that Plaintiff's RFC would permit. R. 29.

11

A claimant's RFC is the most that a claimant can do despite his limitations. 20 U.S.C. § 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 416.946(c). In making that determination, the ALJ must evaluate all the medical evidence as well as the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 633 (6th Cir. 2004); SSR 96–5p, SSR 96–8p. Thus, an ALJ does not improperly assume the role of a medical expert merely by assessing the medical and non-medical evidence when determining a claimant's RFC. *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 157 (6th Cir. 2009). There is no requirement that an ALJ adopt verbatim a medical expert's opinion as to a claimant's ability to engage in work-related activities. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015)("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.") Moreover, the ALJ need include in the claimant's RFC only those limitations that the ALJ deems credible. *Casey v. Sec'y of Health & Human Servs*., 987 F.2d 1230, 1235 (6th Cir. 1993). However, the ALJ's RFC determination, like all findings of the ALJ, must be supported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779 (6th Cir. 2009).

Plaintiff complains that the ALJ erred in finding that Plaintiff did not need additional breaks beyond the normally scheduled work breaks, R. 26, in light of Dr. Schwartzman's opinion that Plaintiff "will occasionally need flexibility in work schedule, taking breaks, and pacing." R. 91. Plaintiff specifically charges that, in making this finding, the ALJ "substitute[d] her lay opinion for that of the state agency's own psychologist." *Plaintiff's Statement of Errors*, ECF No. 10, PageID# 2213. To the contrary, in light of Dr. Schwartzman's opinion that Plaintiff can perform "simple, routine tasks" and "is capable of working in a setting with infrequent changes,"

12

R. 91, the ALJ's RFC for "simple, routine, repetitive tasks, but not at a fast production rate pace or in settings with strict production quotas…. He is able to adapt to infrequent changes in the work setting but would require advance notice of major changes in order to allow gradual implementation of those changes," R. 22, is, in the view of this Court, a reasonable implementation of Dr. Schwartzman's opinion.

Plaintiff also complains that the ALJ improperly failed to incorporate into the RFC Dr. Schwartzman's opinion that Plaintiff would "perform best in a non-public position, preferably working alone. Interactions with coworkers and supervisors should be infrequent and brief. Supervisors will need to offer constructive criticism." R. 91. The ALJ found that Plaintiff could "occasionally interact with coworkers and supervisors, but must avoid tandem or shared tasks. He must not interact with the public." R. 22. The ALJ's prohibition against interaction with the public fully incorporated Dr. Schwartzman's opinion that Plaintiff could work in a "non-public position." Similarly, the ALJ's restriction to only occasional interaction with coworkers and supervisors without tandem or shared tasks–although not repeating verbatim Dr. Schwartzman's language addressing the time and quantity of Plaintiff's ability to interact with coworkers and supervisors–likewise reasonably incorporated the psychologist's opined limitation in this regard into the RFC. In short, the Court concludes that the ALJ's RFC determination enjoys substantial support in the record.

## VI. CONCLUSION

For these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 10, and **AFFIRMS** the Commissioner's decision. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  June 16, 2022                                  *s/Norah McCann King*
                                                     NORAH McCANN KING
                                             UNITED STATES MAGISTRATE JUDGE